U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2014 SEP 15 A 11: 18

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JESUS GONZALO PALAZUELOS SOTO ) | No. 1:13-cr-79-JL |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, John P. Kacavas, the United States Attorney for the District of New Hampshire, and the defendant, Jesus Gonzalo Palazuelos Soto, and the defendant's attorneys, R. Bradford Bailey, Esquire, and Julie Connolly, Esquire, enter into the following Plea Agreement:

### 1. The Plea and The Offense.

The defendant agrees to plead guilty to the August 28, 2013 Indictment charging him with conspiracy to distribute and to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§846 and 841(a). In exchange for the defendant's guilty plea, the United States agrees to the stipulations set forth in Section 6 of this agreement.

### 2. The Statute and Elements of the Offense.

Title 21, United States Code, Section 846 provides:

Any person who attempts or conspires to commit any offense identified in [Title 21, Chapter 13, Subchapter I] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Title 21, United States Code, Section 841(a)(1) provides, in pertinent part:

(a) Unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person

1

>knowingly or intentionally –
>
>(1) to manufacture, distribute, or dispense, or possess with the intent to manufacture, distribute, or dispense, a controlled substance;
>
>. . . .

21 U.S.C. §§ 846, 841(a)(1) (West 2014).

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

>First, that the agreement or conspiracy specified in the indictment, and not some other agreement or conspiracy, existed between at least two people to commit the crime of distribution and possession with the intent to distribute cocaine; and
>
>Second, that the defendant willfully joined in that agreement knowing the illegal nature of the agreement.

Pattern Criminal Instruction for the District Courts of the First Circuit, Instruction 4.18.371 (D. Me. Jan. 13, 2014).

### 3. **Offense Conduct**.

If this case were to go to trial, the United States would offer the following admissible evidence that would prove the elements of the offense beyond a reasonable doubt.

On July 13, 2009, a reliable confidential human source ("CHS") working with the FBI met with a coconspirator of the defendant in Agua Prieta, Mexico to discuss drug trafficking. At that meeting, the CHS learned that Joaquin Guzman-Loera, also known as "Chapo" the leader of the Sinaloa Cartel in Mexico, wanted to expand the cartel's drug trafficking operations into the European market and into the American market north of Boston, Massachusetts. The defendant [coconspirator] also advised the CHS that the cartel leader was interested in meeting the CHS.

2

On October 25, 2009, the CHS met with coconspirators in Hermosillo, Mexico. As instructed by the FBI, the CHS discussed his connections with an organized crime syndicate that smuggled large amounts of illegal narcotics into Europe. The CHS expressed an interest in brokering a drug trafficking partnership between the syndicate and the Sinaloa Cartel.

On April 20, 2010, the CHS and the same coconspirators with whom he met in October 2009 traveled by airplane to the mountains near Culiacan, Mexico, to meet with Guzman-Loera. The CHS and Guzman-Loera conducted in-depth discussions regarding heroin and cocaine distribution, price structures, quantity and quality, and international distribution routes. Guzman-Loera told the CHS that Guzman-Loera intended to send an initial load of 1,000 kilograms of cocaine to begin the partnership. The cocaine would be sent by boat from one of several source countries including, but not limited to, Bolivia, Panama, Venezuela, Belize, or Peru.

The Federal Bureau of Investigation assigned a number of undercover employees to act as representatives of the organized crime syndicate. Between 2010 and August 2012, audiotaped and videotaped meetings between various members of the conspiracy and undercover FBI agents took place in various cities in the United States, including a meeting in April 2011 in New Castle, New Hampshire, as well as in Spain. During this time, the coconspirators discussed quantity of controlled substances to be delivered, the price for those controlled substances, responsibility for the costs of the deliveries, delivery methods, and ports of entry on the eastern seaboard of the United States as well as in Europe. Also during this time, the FBI provided funds for "test" shipments to Europe to convince the conspirators that a shipment of cocaine could be safely delivered. The FBI received cash, heroin and methamphetamine as

repayment for the costs it incurred relating to the "test" shipments.

On August 7, 2012, a shipment of 346 kilograms of cocaine that originated in Brazil was delivered to the FBI undercover employees in Algeciras, Spain. The defendant was arrested with coconspirators Manuel Gutierrez Guzman, Rafael Celaya Valenzuela, Samuel Zazueta Valenzuela. Recorded statements of the defendant would be introduced in which he identified himself as the cartel representative responsible for the shipment from Brazil.

4. **Penalties, Special Assessment and Restitution**.

The defendant understands that the penalties for the offense are:

A. A mandatory minimum sentence of 10 years in prison and a maximum term of life;

B. A maximum fine of $10,000,000 (21 U.S.C. § 841(b)(1)(A)); and

C. A term of supervised release of not less than ~~three~~ *five* (5) years and a maximum of life (21 U.S.C. § 841(b)(1)(A)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. § 3583).

*[initials: RBB RL / GP]*

The defendant also understands that he will be required to pay a special assessment of one hundred dollars ($100) at or before the time of sentencing and that the Court may order him to pay restitution to the victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3663A.

5. **Sentencing and Application of the Sentencing Guidelines**.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw his guilty plea if the applicable advisory guideline range or his sentence is other than he anticipated.

4

The defendant also understands that the United States and the United States Probation Office shall:

- A. Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

- B. Respond to questions from the Court;

- C. Correct any inaccuracies in the pre-sentence report;

- D. Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range with the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise, and is not binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

6. **Sentencing Stipulations and Agreements**.

The United States agrees that it will make a recommendation that the defendant be sentenced to a term of imprisonment that is no greater than the low end of the advisory sentencing guideline that would be applicable to the defendant if the defendant chooses not to avail himself of the safety valve provision found at U.S.S.G. § 5C1.2. If the defendant avails himself of the safety valve provision and is awarded that adjustment by the court, the government will recommend a sentence within the range adopted by the court that reflects application of the safety valve.

The defendant also understands that if the Court does not accept this agreement, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

5

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7. **Acceptance of Responsibility**.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

- A. Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

- B. Challenges the United States' offer of proof at any time after the plea is entered;

- C. Denies involvement in the offense;

- D. Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

- E. Fails to give complete and accurate information about his financial status to the Probation Office;

- F. Obstructs or attempts to obstruct justice, prior to sentencing;

- G. Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

- H. Fails to appear in court as required;

- I. After signing this Plea Agreement, engages in additional criminal conduct;

6

or

J.     Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

### 8. **Waiver of Trial Rights and Consequences of Plea**.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

A.     To plead not guilty or to maintain that plea if it has already been made;

B.     To be tried by a jury and, at that trial, to the assistance of counsel;

C.     To confront and cross-examine witnesses;

D.     Not to be compelled to provide testimony that may incriminate him; and

E.     To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9. **Acknowledgment of Guilt; Voluntariness of Plea**.

The defendant understands and acknowledges that he:

A. Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B. Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement;

C. Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D. Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E. Is completely satisfied with the representation and advice received from his undersigned attorney.

10. **Scope of Agreement**.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are

8

solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. **Collateral Consequences**.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

12. **Satisfaction of Federal Criminal Liability; Breach**.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from the conduct that forms the basis of the Indictment in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

13. **Waivers.**

A. **Appeal.**

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1. His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2. The sentence imposed by the Court if within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel in the negotiation of this Plea Agreement or at the sentencing hearing.

B. **Collateral Review**

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2. The sentence imposed by the Court if it falls within, or lower than, the guideline range as determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel in the negotiation of the Plea, Plea Agreement or the sentencing hearing. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. **Freedom of Information and Privacy Acts**

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. **Appeal by the Government**

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government to pursue an appeal that is authorized by law.

14. **No Other Promises**.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15. **Final Binding Agreement**.

None of the terms of this Plea Agreement shall be binding on the United States until this

11

Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16. **Agreement Provisions Not Severable.**

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

Date: 8/14/14

JOHN P. KACAVAS
United States Attorney

By: _____
Donald Feith
First Assistant U.S. Attorney
New Hampshire # 783
53 Pleasant St., 4th Floor
Concord, NH 03301
(603) 225-1552
Donald.Feith@usdoj.gov

I, Rafael Rodriguez, have translated this 13-page Plea Agreement from English to Spanish for the defendant, Jesus Gonzalo Palazuelos Soto, and I hereby certify that I have translated it faithfully and accurately to the best of my knowledge, skill and ability, as I am competent to render such translation.

Date: 8/14/14

The defendant, Jesus Gonzalo Palazuelos Soto, certifies that he has read this 13-page Plea Agreement and that he fully understands and accepts its terms.

Date: 8/14/14

_____
Jesus Gonzalo Palazuelos Soto, Defendant

I have read and explained this 13-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 8/14/14

_____
R. Bradford Bailey, Esquire
Attorney for Jesus Gonzalo Palazuelos Soto

_____
Julie Connolly, Esquire
Attorney for Jesus Gonzalo Palazuelos Soto

13